# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

FILED BY ____AP____ D.C.
Sep 10, 2021
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

For rules and forms visit
www.ca11.uscourts.gov

September 10, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 18-12842-JJ
Case Style: Rebekka Behr, et al v. James Campbell, et al
District Court Docket No: 9:18-cv-80221-RLR

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 18-12842

_____

District Court Docket No.
9:18-cv-80221-RLR

REBEKKA ANNE BEHR,
LOUIS H. BEHR,
J.B.,
minor child, by and through Father, Louis H. Behr,

                                              Plaintiffs - Appellants,

versus

JAMES CAMPBELL,
individually and in his official position as
principal for PBCSD,
PALM BEACH COUNTY SCHOOL DISTRICT,
c/o Dr. AV6OSSO, Superintendent,
MELISSA K. BROOKS,
individually and as natural birth mother,
PATRICIA FRANKLIN,
individually,
SANDRA SEDER,
individually and as lawyer, et al.,

                                                Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: August 12, 2021
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna H. Clark

ISSUED AS MANDATE 09/10/2021

[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

_____

No. 18-12842

_____

D.C. Docket No. 9:18-cv-80221-RLR

REBEKKA ANNE BEHR,
LOUIS H. BEHR,
J.B.,
minor child, by and through Father, Louis H. Behr,

                                        Plaintiffs-Appellants,

versus

JAMES CAMPBELL,
individually and in his official position as
principal for PBCSD,
PALM BEACH COUNTY SCHOOL DISTRICT,
c/o Dr. AV6OSSO, Superintendent,
MELISSA K. BROOKS,
individually and as natural birth mother,
PATRICIA FRANKLIN,
individually,
SANDRA SEDER,
individually and as lawyer, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 12, 2021)

Before WILSON, GRANT, and TJOFLAT, Circuit Judges.

GRANT, Circuit Judge:

Though one might not always know it from reading federal cases, *Rooker-Feldman* is a narrow jurisdictional doctrine. It simply establishes that a party who loses a case in state court cannot appeal that loss in a federal district court. This is a straightforward enough rule, and the Supreme Court has held the line without hesitation for nearly a century. But the story has been different in the lower courts—our application of *Rooker-Feldman* has been unrestrained to say the least, sometimes leading to dismissal of any claim that even touches on a previous state court action. Though the Supreme Court has stepped in to restore the doctrine to its original boundaries, courts have continued to apply *Rooker-Feldman* as a one-size-fits-all preclusion doctrine for a vast array of claims relating to state court litigation.

This case is a prime example. After a difficult series of child custody interventions and state proceedings, Louis Behr and two of his children filed a 30-count pro se complaint in federal district court asserting a wide variety of constitutional, statutory, and tort claims against 18 named defendants. The district court, seeing that the claims were related to the Behrs' earlier state court litigation, dismissed the entire complaint on *Rooker-Feldman* grounds.

That kind of sweeping dismissal is not at all unusual—but it is also at odds with the Supreme Court's clearly articulated description of *Rooker-Feldman*. Our own review of the complaint shows that several of the claims the Behrs raised do not fall within that doctrine's narrow bounds. The district court may ultimately have reason to dismiss them, but not on *Rooker-Feldman* grounds. That doctrine's era of expansion is over.

## I.

Louis Behr lost custody of two of his four children, Miracle and Casandra. Louis and his other two children, Rebekka and J.B., believe that a host of defendants—including Louis's ex-wife, her partner, an employee of Child Protective Services, the principal at Rebekka's school, the Palm Beach County School District, and the Palm Beach County Department of Children and Families, among others—conspired to deprive Louis of custody through state child custody proceedings. Louis, Rebekka, and J.B. filed a pro se complaint in state court, lodging a host of federal and state-law claims against these defendants.

Two defendants removed the case to federal court. The district court dismissed the case twice, but each time allowed the Behrs to file an amended complaint. The second amended complaint rounds out at 75 pages and contains 30 counts. Those counts include allegations that the defendants violated the Behrs' Fourth and Fourteenth Amendment rights and federal law in a number of ways—fabricating reports, pressuring the children to make false statements against their father, entering Louis's home without permission and on false pretenses, and

discriminating against the Behrs on the basis of age, sex, disability, and religion. The Behrs also raise several state-law claims.

Just seven days after the complaint was filed, the district court sua sponte entered a five-page order dismissing the case for lack of subject matter jurisdiction. The *Rooker-Feldman* doctrine, it said, prevented it from reviewing the Behrs' claims because they were "presented or adjudicated by a state court" or "'inextricably intertwined' with a state court judgment." The district court concluded that the Behrs' claims were, at bottom, "requesting the Court review the determinations by the state that caused two of [Louis's] children to be removed from his custody and determine that it was the product of falsified reports." It dismissed the entire complaint on that basis, with prejudice. The Behrs appeal that dismissal order.

## II.

We review de novo the district court's determination that it lacks subject matter jurisdiction. *Doe v. Fla. Bar*, 630 F.3d 1336, 1340 (11th Cir. 2011).

## III.

Case by case, over the course of several decades, our Circuit and others built *Rooker-Feldman* into a sweeping jurisdictional doctrine. We concluded that it was "broad enough" to bar federal courts' consideration of "all federal claims which were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001). This included not only those "claims presented or adjudicated by a state court," but also

claims that were "'inextricably intertwined' with a state court judgment," effectively barring federal courts' jurisdiction over all issues that seemed sufficiently related to an earlier state court case. *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc). Our inflated view of the doctrine, widely shared though it may have been, was actually a misunderstanding—one that the Supreme Court has stepped in to correct.

The Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.* restored *Rooker-Feldman* to its original boundaries. 544 U.S. 280 (2005). The doctrine occupies "narrow ground" and is "confined to cases of the kind from which the doctrine acquired its name"—that is, *Rooker* and *Feldman*. *Id.* at 284; *Rooker v. Fid. Tr. Co.*, 263 U.S. 213 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Those cases held that state court litigants do not have a right of appeal in the lower federal courts; they cannot come to federal district courts "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[1] *Exxon Mobil*, 544 U.S. at 284.

As *Exxon Mobil* recognized, this rule follows naturally from the jurisdictional boundaries that Congress has set for the federal courts. First, federal district courts are courts of original jurisdiction—they generally cannot hear

---

[1] In *Rooker*, the Supreme Court held that the plaintiffs—parties who lost in state court—could not ask the federal district court to declare the state court judgment "null and void." *Exxon Mobil*, 544 U.S. at 284 (quoting *Rooker*, 263 U.S. at 414–15). In the same vein, the *Feldman* Court said that lower federal courts lacked jurisdiction to review a decision by the District of Columbia's Court of Appeals denying a waiver of a court rule for bar applicants. *Id.* at 285 (quoting *Feldman*, 460 U.S. at 482).

appeals. *Id.* at 291–92 (citing 28 U.S.C. § 1331). And second, only the Supreme Court can "reverse or modify" state court judgments; neither district courts nor the circuits can touch them. *Id.* at 283 (citing 28 U.S.C. § 1257(a)); *see also Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1221 (11th Cir. 1999). Allowing federal district courts to alter or directly review the judgments of state courts would violate both of those jurisdictional grants. *See Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002).

That, though, is as far as *Rooker-Feldman* goes. Unlike many doctrines, it is not prudential—it is based explicitly on the statutory limitations of federal district courts' jurisdiction. Only when a losing state court litigant calls on a district court to modify or "overturn an injurious state-court judgment" should a claim be dismissed under *Rooker-Feldman*; district courts do not lose subject matter jurisdiction over a claim "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil*, 544 U.S. at 292–93. Nor is *Rooker-Feldman* "simply preclusion by another name." *Lance v. Dennis*, 546 U.S. 459, 466 (2006). To be sure, other doctrines of preclusion, abstention, or comity may still bar a plaintiff's claims—but they are separate and distinct from *Rooker-Feldman*'s jurisdictional prohibition on appellate review of state court decisions in federal district courts. *Exxon Mobil*, 544 U.S. at 292.

*Exxon Mobil* exposed the flaws in our significant expansion of *Rooker-Feldman*, and this Court got the message. In *Nicholson v. Shafe*, one of our first cases addressing the doctrine after *Exxon Mobil*, we recognized that the Supreme

6

Court's opinion "clarified the scope of the *Rooker-Feldman* doctrine by returning it to its roots, the facts of the *Rooker* and *Feldman* cases." 558 F.3d 1266, 1274 (11th Cir. 2009). In response, we abandoned the four-factor test that had previously guided this Circuit's application of *Rooker-Feldman*. *See id.* at 1273–74. We chose instead to "adhere to the language in *Exxon Mobil*, delineating the boundaries of the *Rooker-Feldman* doctrine." *Id*. at 1274.

*Nicholson* set down the right markers, and in our subsequent *Rooker-Feldman* cases we have stayed the course, asking whether the claims raised before the district court were "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. (quoting *Exxon Mobil*, 544 U.S. at 284); *see Casale v. Tillman*, 558 F.3d 1258, 1261 (11th Cir. 2009) (same); *May v. Morgan County*, 878 F.3d 1001, 1004 (11th Cir. 2017) (same); *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285 (11th Cir. 2018) (same). Throughout these cases we have emphasized the "limited" and "clearly narrow" nature of the doctrine. *Target Media*, 881 F.3d at 1285; *May*, 878 F.3d at 1004. *Rooker-Feldman*, we now understand, does not prevent a "district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Nicholson*, 558 F.3d at 1274 (quoting *Exxon Mobil*, 544 U.S. at 293).

That said, *Rooker-Feldman* also does not prioritize form over substance. It bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else. *May*, 878

7

F.3d at 1005; *see id.* (A "state court loser cannot avoid *Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different claim."). In *Feldman*, for example, the plaintiffs asked the district court to overturn the state court's judgment. *See* 460 U.S. at 468–69, 472–73. But they *also* asked the district court to declare that the state court acted "arbitrarily and capriciously" by denying their claim. *Id.* at 486. The Supreme Court recognized that these two claims were one and the same and dismissed both for lack of jurisdiction. *Id.*

*Feldman*'s holding does not seem complicated through that lens: appeals of state court judgments are barred under *Rooker-Feldman*, no matter how the claims are styled. But when *Feldman* applied that straightforward rule, it labeled those disguised claims as "inextricably intertwined" with the state court judgment. *Id.* at 486–87. Those two words—admittedly hard to decipher when unmoored from the facts of the case—have spawned endless confusion. Indeed, that term is usually at the root of the many mistaken *Rooker-Feldman* dismissals that we are called to review.

To be fair, we may have overcomplicated *Feldman*'s rule as we tried to describe what it means for a claim to be "inextricably intertwined." And we have occasionally even treated it as a step two of the *Rooker-Feldman* analysis, asking first whether a claim presents a direct appeal of a state court judgment and then moving on to consider whether the claim otherwise "intertwines" the lower courts with state court proceedings in various ways. *See, e.g.*, *Target Media*, 881 F.3d at 1286. That two-step analysis was provoked by various explanations of "inextricably intertwined." But those pre-*Exxon Mobil* explanations inspired a

needlessly complicated, multi-step analysis, instead of what should have been a simple inquiry—whether the plaintiff's claim directly challenged a state court loss.

*Exxon Mobil* was a much-needed corrective, and our holdings have since retreated to *Rooker-Feldman*'s narrow boundaries. We have rested on *Feldman*'s meaning: a "claim that at its heart challenges the state court decision itself—and not the statute or law which underlies that decision—falls within the doctrine because it 'complains of injuries caused by state-court judgments' and 'invites review and rejection of those judgments.'" *May*, 878 F.3d at 1005 (alterations adopted) (quoting *Exxon Mobil*, 544 U.S. at 284). And again, shortly after *Exxon Mobil*, we emphasized our intent to apply the doctrine consistently with the facts of its two namesake cases. *See Nicholson*, 558 F.3d at 1274.

Unfortunately, litigants and the district courts have still not gotten the message. Parties keep arguing that district courts should dismiss claims as "inextricably intertwined" even when those claims do not seek "review and rejection" of a state court judgment, and district courts keep doing so. *Id.* (quoting *Exxon Mobil*, 544 U.S. at 291). The problem, perhaps, is that while we have actually applied the narrow reading of *Rooker-Feldman* demanded by *Exxon Mobil*, we have kept quoting our pre-*Exxon Mobil* definitions of "inextricably intertwined." *See, e.g.*, *May*, 878 F.3d at 1005; *Casale*, 558 F.3d at 1260. Take, for instance, one of our recent cases, *Target Media Partners v. Specialty Marketing Corp.*, 881 F.3d 1279. As background for our reasoning, in dicta, we described both our pre- and post-*Exxon Mobil* precedents and cited numerous explanations of the "inextricably intertwined" test from those precedents, some of which may be

9

inconsistent with the narrow inquiry now demanded by *Exxon Mobil*. *Id.* at 1286–87.

That sort of discussion, while an accurate description of our earlier precedents, risks reigniting the confusion that the Supreme Court tried to clear up. But in the end, we correctly recognized (consistent with *Exxon Mobil*) that finding a claim "to be barred by *Rooker-Feldman* requires that it amount to a direct attack on the underlying state court decision." *Id.* at 1288. *Rooker-Feldman*, we emphasized, does not block claims that "require some reconsideration of a decision of a state court" if the plaintiff presents "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* (quoting *Exxon Mobil*, 544 U.S. at 293).

To whatever extent we have not been clear enough before, we aim to be now. *Rooker-Feldman* means that federal district courts cannot review or reject state court judgments rendered before the district court litigation began. It is, really, a straightforward application of the statutes establishing our jurisdiction. The doctrine does not need to be a source of confusion in federal law. Nor can it be a broad means of dismissing all claims related in one way or another to state court litigation. Its application is narrow and—surprisingly enough—quite simple. It bars only "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284; *see also Nicholson*, 558 F.3d at 1274. The injury must be caused by the judgment itself. Period. And considering whether a claim is "inextricably

10

intertwined" with a state court judgment is not a second prong of the analysis; it is merely a way of ensuring that courts do not exercise jurisdiction over the appeal of a state court judgment simply because the claimant does not call it an appeal of a state court judgment. Anything other than that kind of appeal can and should be addressed by other preclusion or abstention doctrines. *See, e.g.*, *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1074–80 (11th Cir. 2013).

In short, district courts should keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply.

## IV.

Where does this leave the Behrs? On appeal, they have identified at least three federal claims that they believe should not have been dismissed under the *Rooker-Feldman* doctrine: their claims for violation of their procedural due process rights (Count 2), discrimination (Count 10), and an unreasonable search and seizure (Count 3).

To begin, we emphasize that their claim-by-claim approach is the right one. The district court's five-page order made a sweeping proclamation that the Behrs' claims were, at bottom, "requesting the Court review the determinations by the state that caused two of [Louis's] children to be removed from his custody and determine that it was the product of falsified reports." But *Rooker-Feldman*, being a narrow and limited doctrine, requires a more targeted approach. The question isn't whether the whole complaint seems to challenge a previous state court judgment, but whether resolution of each individual claim requires review and rejection of a state court judgment.

11

Following that approach, we'll start with the Behrs' due process claim. The Behrs allege that procedural due process violations resulted "from the use of falsified and/or coerced information as a basis for the proceedings and decisions." Rebekka and J.B. further claim that their due process rights were violated through "the restriction of access to the courts and denial of adequate legal counsel." But, as counsel clarified at oral argument, they do not raise these constitutional claims to undo the state court's child custody decision; they want money damages for constitutional violations. In other words, they are not raising these due process claims so that we can "review and reject" the state court's child custody judgment. *That* would be a violation of *Rooker-Feldman*. Instead, they are asking us to consider whether their constitutional rights were violated during the proceedings and whether they are entitled to damages for those violations. That claim falls outside *Rooker-Feldman*'s boundaries.

Next, Louis claims that several government entities discriminated against him because of his age by "continually bringing up the age difference between Mr. Behr and [his ex-wife] on the record and documents" during the child custody proceedings. The Behrs also claim that various defendants—including the Palm Beach and Florida Department of Children and Families, the Palm Beach Attorney General's Office, the guardian ad litem program, and others—discriminated against them on the basis of gender, religious beliefs, and disability. The defendants, for their part, contend that these issues are "inextricably intertwined" with the state court judgment because "to resolve the age-difference claim, the federal court would have to review whether it was proper for the state court to

12

consider the age difference in its decision-making process." Not so. This claim, like the others, falls outside *Rooker-Feldman* because it seeks relief for violations that happened during the state processes, not rejection of the state court judgment.

Finally, the Behrs allege a violation of their Fourth Amendment rights, claiming that the "Palm Beach County Department of Children and Families and its investigator, as well as other, unidentified, defendants, entered Louis' home without permission and under false pretenses." This claim appears to have no connection at all to an underlying state court judgment. Neither party alleges that the search had anything to do with a state court proceeding. And even if it did, again, the Behrs ask only for damages for this claim—they are not seeking to appeal or undo a state court judgment. So this claim, too, survives *Rooker-Feldman*.

We recognize that had some of these claims been litigated before *Exxon Mobil*, we may well have barred them. The defendants, for instance, point us to *Goodman ex rel. Goodman v. Sipos*, urging us to use that case to guide our consideration of the Behrs' due process claims. *See* 259 F.3d 1327. There, we noted that the plaintiff's similar argument struck at the "heart of the state court's proceedings and judgment, because the state court decided to take away Goodman's custody of Michael only after finding [the witness's] affidavit to be credible and finding that the ex parte order was justified." *Id.* at 1334. But we should not be at all surprised that our cases will turn out differently post-*Exxon Mobil*. As we've already stated here—and recognized in binding precedent—that case fundamentally reframed how we must apply *Rooker-Feldman*. *Goodman* and

13

other pre-*Exxon Mobil* cases no longer set the bar for which claims are or are not permissible under that doctrine.

To that end, we also explicitly reject another proposition from *Goodman*: that we "focus on the federal claim's relationship to the issues involved in the state court proceeding, instead of on the type of relief sought by the plaintiff." *Id*. at 1333. As demonstrated above, the claim for relief *does* matter. Because *Rooker-Feldman* bars only claims that invite a district court's "review and rejection" of a state court judgment, claims that seek only damages for constitutional violations of third parties—not relief from the judgment of the state court—are permitted. *See VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (the court cannot determine whether the plaintiff's injury arises from the state court judgment and is barred by *Rooker-Feldman* "without reference to the plaintiff's request for relief" (alterations adopted) (quotation omitted)).

We reemphasize one point here: *Rooker-Feldman* will bar far fewer cases going forward, but this does not mean plaintiffs have free rein to relitigate in federal court any and all issues related to their state court proceedings. Other preclusion and abstention doctrines remain alive and well, and in "parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment." *Exxon Mobil*, 544 U.S. at 293; *see also Lozman*, 713 F.3d at 1074–80.

Because the district court dismissed the Behrs' complaint solely based on *Rooker-Feldman*, that is all we address here. The Behrs' due process, discrimination, and Fourth Amendment claims do not ask us to review and reject

14

the state court's child custody judgments.  That means *Rooker-Feldman* does not stand in their way.  But because the Behrs did not challenge the dismissal of their other federal claims, those dismissals are affirmed.  For their part, the defendants ask us to affirm the complete dismissal of the complaint on a number of other grounds.  The Behrs' claims may indeed be subject to dismissal for those reasons, but we think it is better to leave these arguments to the district court to consider in the first instance.  *See Danley v. Allen*, 480 F.3d 1090, 1092 (11th Cir. 2007).  Whether or not the district court retains any of the federal claims after considering these arguments, the court may also reconsider whether it wishes to exercise supplemental jurisdiction over any of the Behrs' state-law claims.

*   *   *

*Rooker-Feldman* is not a jurisdictional giant.  It is a limited doctrine that applies only when litigants try to appeal state court losses in the lower federal courts.  Here, the district court erred by dismissing the Behrs' complaint in one fell swoop without considering whether each individual claim sought "review and rejection" of a state court judgment.  And, in the three federal claims the Behrs raised before this Court, they sought damages for issues collateral to a state court judgment rather than relief from that judgment itself.  *Rooker-Feldman* does not apply to those claims.  We thus vacate the district court's dismissal and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 12, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 18-12842-JJ
Case Style: Rebekka Behr, et al v. James Campbell, et al
District Court Docket No: 9:18-cv-80221-RLR

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs